UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

BONNIE L. FIELDS,           )
                            )
        Plaintiff,           )
                            )
    v.                       )        CASE NO.: 3:15-CV-76 JVB
                            )
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security,  )
                            )
        Defendant.           )

**OPINION AND ORDER**

Plaintiff Bonnie Fields seeks review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d)(2). Plaintiff asks the Court to reverse the Commissioner's decision and award benefits, or in the alternative, remand the decision for further proceedings. For the following reasons, the Court grants Plaintiff's request for remand.

**A. Procedural Background**

On January 10, 2012, Plaintiff applied for DIB alleging that she became disabled on September 27, 2011. (R. 9.) Plaintiff's application was initially denied and again upon reconsideration. (R. 68–71, 72–75.)

On July 9, 2013, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert testified. (R. 21– 64.) On September 20, 2013, the ALJ issued a decision finding that Plaintiff was not disabled and denied her DIB claim. (R. 9– 6.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with certain non-exertional limitations. (R. 13.)

On January 6, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1–3.) Plaintiff now requests judicial review of the ALJ's decision denying her DIB claim.

**B. Factual Background**

**(1)** *Plaintiff's Background*

Plaintiff was born on January 6, 1957, and was 54 years old at the time of the alleged onset date of her disabling condition. (R. 169.) She graduated from high school and completed one year of college. (R. 28, 173.) Plaintiff previously worked as a general manager at a fast food restaurant for fifteen years. (R. 173.)

**(2)** *Overview of Medical Evidence*

Medical records from 2011 through 2013 document that Plaintiff suffers from a number of severe ailments, including degenerative disc disease in her cervical and lumbar spines, and arthritis in her thoracic spine. (R. 254, 292.) An MRI of Plaintiff's cervical spine indicated mild to moderate broad-based posterior disc osteophyte complexes at C4–C5 and C6–C7, bilateral foraminal narrowing, and bilateral joint hypertrophy. *Id.* She underwent a partial fusion of her cervical spine at C5–C6. *Id.* Plaintiff's neck showed a decreased range of motion with flexion, extension, and side bending rotation to the right. (R. 52, 308.) A CT indicated chronic moderate facet arthritic changes bilaterally at L4–L5. (R. 259.) She was also diagnosed with facet arthritis at T8–T9. (R. 316.) Plaintiff's bone scan indicated subtle focal uptake in the dorsal spine at T8 or T9. (R. 256.) Plaintiff

was initially prescribed Percocet for her back pain and later took over-the-counter Ibuprofen. (R. 36, 308, 313.)

Plaintiff suffers from additional chronic health problems. She has migraine headaches and requires Imitrex injections to treat her symptoms. (R. 34, 307.) Plaintiff has dysphagia (difficulty swallowing) and her physician diagnosed Schatzki's ring (a narrowing of the lower esophagus) with reactive squamous change. (R. 275, 277, 281, 282, 301.) This condition is compounded by a small to moderate sized hiatal hernia and erosive gastropathy. (R. 272.) Plaintiff was diagnosed with obesity and prescribed Fastin for weight loss. (R. 307–08.) She also receives treatment for depression, anxiety, upper right quadrant neuropathic pain, hyperplastic and adenomatous polyps, incontinence, chronic bronchitis, hypertension, and hypokalemia (potassium deficiency). (R. 265, 270, 271, 279, 285, 307, 311, 313–15, 363.)

**(3)** *Plaintiff's Testimony*

Plaintiff testified she became disabled on September 27, 2011, as a result of severe headaches and back and neck pain. (R. 29.) She took a three-month medical leave from work and, when she returned to work, in January 2012, she learned her position had been filled. (R. 29–31.) Plaintiff testified she did not have health insurance and could not afford to go to the doctor. (R. 33, 42–43.) She suffered from migraine headaches for many years and Imitrex helped to alleviate her symptoms if the injection was given at the onset of the headache and she was able to lie down. (R. 34.) Plaintiff explained her headaches often lasted for two to three days and she woke up with a headache three out of five days a week. (R. 45, 49.) She estimated she would miss twelve to fifteen days of work per month as a result of her severe headaches. (R. 48–49.)

Plaintiff stated she has degenerative arthritis and underwent a partial spinal infusion at the C5-C6 level. (R. 35.) She was prescribed Percocet for her neck pain that radiates down her back, but she can no longer afford her medication. (R. 36.) Plaintiff now takes over-the-counter medications for her pain. *Id.* She described her daily activities as making coffee, taking medication, showering, watching television, checking email, playing games, calling her mother, and doing household chores. (R. 38–40.)

**(4)** *Vocational Expert's Testimony*

Dian Heller, a vocational expert testified at the administrative hearing. Heller classified Plaintiff's past work as a fast food restaurant manager as light, skilled work. (R. 55.) The ALJ posed a hypothetical question to Heller asking her to assume an individual with Plaintiff's age, education, work experience, and residual functional capacity for light work but who should avoid concentrated exposure to dust, odors, fumes and poorly ventilated spaces. (R. 56.) Based on these limitations, Heller determined Plaintiff could perform her past work as a fast food restaurant manager and also jobs as a cashier, factory worker, and rental clerk. (R. 56–58.) The ALJ posed a second hypothetical question with the same limitations, but restricting Plaintiff to frequently looking in all directions (up, down and sideways) to which Heller determined there were additional jobs in the national economy Plaintiff could perform. (R. 58–59.) Heller testified that if Plaintiff were absent from work three or more days per week, she could not sustain any competitive employment. (R. 59–60.)

**C. Standard of Review**

The applicable standard of review of the Commissioner's decision is a familiar one: the Court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may not reevaluate the facts, reweigh the evidence, or substitute its judgment for that of the Social Security Administration. *Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Where conflicting evidence would allow reasonable minds to differ as to whether a plaintiff is disabled, the Commissioner has the responsibility for resolving those conflicts. *Id.* Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the Court must reverse the decision regardless of the evidence supporting the factual findings. *Id.*

**D. Five-Step Inquiry**

An individual is "disabled" if she has an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). The Social Security Regulations set forth a five-step sequential inquiry for determining whether a claimant is disabled. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable

to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005) (citation omitted).

An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520; *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985) (citation omitted). The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

**E. Analysis**

Plaintiff challenges a number of aspects of the ALJ's decision. She first contends the ALJ's credibility determination was flawed because the ALJ failed to account for the fact that she could not afford medical treatment and medication. She further claims the credibility determination was improper because the ALJ overemphasized her daily activities and failed to give proper weight to her work history. Plaintiff next argues the ALJ improperly "played doctor" in analyzing the severity of her migraine headaches. She also avers the ALJ failed to incorporate all of the limitations stemming from her severe and non-severe impairments in the RFC assessment. Furthermore, Plaintiff asserts the ALJ failed to properly evaluate her obesity.

**(1)** *Migraine Headaches*

Contrary to the Commissioner's contention that the ALJ properly evaluated the record evidence regarding Plaintiff's migraine headaches, the central error in this case stems from the ALJ's misunderstanding of the diagnosis and treatment of migraine headaches. The ALJ believed that Plaintiff's complaints of disabling headache pain were undermined by the lack of objective medical evidence or "imagining evidence to suggest an abnormality that caused migraines." (R. 14.) However, the ALJ did not understand that "migraine headaches do not stem from a physical or chemical abnormality that can be detected by imagining techniques, laboratory tests, or physical examination, but are linked to disturbances in cranial blood flow." *Stebbins v. Barnhart*, No. 03-C-0117, 2003 WL 23200371, at *10 (W.D. Wis. Oct. 21, 2003). One medical source states:

> The cause is unknown, and the pathophysiology is not fully understood. Changes in brain and scalp arterial blood flow occur, but whether vasodilation and vasoconstriction are a cause or an effect of the migraine is unclear . . . Intracranial vascular malformations are a rare cause of migraine-like headaches.

*Id.* (citing The Merck Manual of Diagnosis and Therapy, www.merck.com/pubs/mmanual/section 14/chapter1688/168b.htm). Instead, a diagnosis of migraine headaches is made on the basis of certain clinical criteria. *Id*. This criteria includes a "recurrent headache that: lasts from 4 to 72 hours; is throbbing, is moderate to severe in intensity; is localized to one side of the head; and is associated with nausea, vomiting or sensitivity to light, sound or smell." *Id*. (citation omitted). Because there is no medical test available to confirm the presence or severity of migraine headaches, the ALJ improperly relied on the absence of such evidence to discount Plaintiff's testimony. Accordingly, the ALJ erred by "playing doctor" when she reached her own independent medical conclusion about the diagnosis of Plaintiff's migraine headaches. *Rohan v. Chater*, 98 F.3d 966, 970

7

(7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

The ALJ's analysis of Plaintiff's migraine headaches contained additional flaws. The ALJ assumed that Plaintiff's headaches were not disabling because Imitrex injections helped to alleviate some of her symptoms. (R. 14.) But Plaintiff's headache logs covering seven months between June 2012 and June 2013 documented the severity of her pain as ranging from 7 to 10 on a 10 point scale on those days she took her medication. (R. 365, 368–372.) The logs also documented the fact that Plaintiff's headaches lasted two or three days on some occasions. *Id.* The ALJ further assumed that Plaintiff's headaches were not disabling because she was never hospitalized for her headaches. (R. 14.) The ALJ again "plays doctor" by reaching her own independent medical conclusion that Plaintiff must seek hospital treatment in order for her headaches to be disabling. Based on these shortcomings, a remand is warranted because the ALJ failed to "build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

**(2)** *Credibility Determination*

An ALJ's credibility finding will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnha rt*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). "A credibility assessment is afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (citation omitted). However, where the credibility determination is based on objective factors rather than subjective considerations, the court has greater freedom to review the ALJ's decision. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Therefore, where "the

8

reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result," an ALJ's credibility determination will not be upheld. *Sarchet*, 78 F.3d at 307.

The ALJ made a number of reversible errors in assessing the credibility of Plaintiff's testimony. First, the ALJ discounted Plaintiff's testimony because she "had limited treatment for [her] migraines and neck pain." (R. 14, 15.) The ALJ noted that Plaintiff had not been hospitalized for either of these conditions. *Id.* But the ALJ neither discussed nor considered the reasons Plaintiff gave at the hearing for not seeking medical treatment. Plaintiff testified that she did not have medical insurance and could not afford treatment. (R. 33, 36.) She applied for Medicaid, but her application was denied. (R. 43.) Thus, it was improper for the ALJ to "draw any inferences about [Plaintiff's] condition . . . [without having] explored [Plaintiff's] explanations as to the lack of medical care." *Craft*, 539 F.3d at 679 (citation omitted). Because the ALJ never discussed the crucial hearing testimony in her decision, the Court cannot be sure she considered it when she assessed Plaintiff's credibility.

The ALJ also discredited Plaintiff's testimony because she found her reports of her daily activities inconsistent with her allegations of disabling pain and limitations. (R. 14.) Plaintiff testified that her daily activities consisted of making coffee, taking medication, showering, watching television, checking email, playing games, calling her mother, and doing household chores. (R. 38–40.) But here Plaintiff's ability to perform limited daily activities does not equate to an ability to sustain full-time work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

Furthermore, as Plaintiff points out, the ALJ failed to consider Plaintiff's long work history as a factor supporting her credibility. Instead, the ALJ discounted Plaintiff's credibility on the basis that she continued to look for work after her fast food restaurant manager position had been

9

eliminated and held herself out as being able to work because she collected unemployment after the alleged onset date of her disabling condition. (R. 14.) Contrary to the ALJ's finding, "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Springer v. Colvin*, 1:13-CV185, 2014 WL 3075342, at *8 (N.D. Ind. July 2, 2014) (citations omitted). Based on these shortcomings, this Court cannot uphold the ALJ's credibility determination.

*(3) RFC Determination*

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). According to the regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Young*, 362 F.3d at 1002. In other words, the

ALJ must build an accurate and logical bridge from the evidence to his ultimate conclusion. *Scott*, 297 F.3d at 595.

Plaintiff asserts that the ALJ erred in her RFC assessment because the ALJ failed to consider the combined impact of her impairments, which include obesity, depression, anxiety, upper right quadrant neuropathic pain, hyperplastic and adenomatous polyps, incontinence, chronic bronchitis, hypertension, and hypokalemia (potassium deficiency). As Plaintiff correctly points out, the ALJ must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. The ALJ is required to undertake this analysis because the combination of a claimant's impairments "might well be totally disabling" even if each of the claimant's impairments standing alone is not serious. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir.2011). Here, the ALJ's RFC analysis does not give this Court confidence that she gave appropriate consideration to the combined effects of Plaintiff's impairments. The ALJ's failure to consider the full impact of Plaintiff's impairments is another reason why this case must be remanded for further proceedings. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir.2009). Accordingly, a remand is warranted.

## CONCLUSION

For the foregoing reasons, the ALJ's decision and the Commissioner's subsequent denial of Plaintiff's DIB benefits is reversed, and this case is remanded with instructions to return the matter to the Social Security Administration for further proceedings consistent with this Opinion.

SO ORDERED on September 30, 2016.

                                      s/ Joseph S. Van Bokkelen
                                      JOSEPH S. VAN BOKKELEN
                                      UNITED STATES DISTRICT JUDGE
                                      HAMMOND DIVISION